IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEM SOUTHWEST LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:24-CV-1899-D |
| | § | |
| TOPY ENTERPRISES, LIMITED, et al., | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, plaintiff Gem Southwest LLC ("Gem") asserts various state-law claims against defendants Topy Enterprises, Limited ("Topy Enterprises"), Topy America, Inc. ("Topy America"), Dowa Eco-Systems Co. Ltd. ("Dowa Eco-Systems"), and Dowa International Corporation ("Dowa International").  Three of the four defendants—Topy Enterprises, Topy America, and Dowa International—move, in pertinent part, to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.[1]  For the reasons that follow, the court grants their motions and dismisses this action without prejudice as to Topy Enterprises, Topy America, and Dowa International by Rule 54(b) final judgment filed today.[2]

---

[1]With the court's permission, Dowa International filed its reply brief on October 7, 2024.

[2]The petition refers to Topy Enterprises and Topy America, collectively, as "Topy," and to Dowa Eco-Systems and Dowa International, collectively, as "Dowa."  The court sometimes does so as well in this memorandum opinion and order.

I

This lawsuit arises from a business arrangement among Gem, Topy, and Dowa.[3] Through three contracts, the companies agreed that: Gem would send metal scraps to Dowa; Dowa, after sampling and testing the scraps, would pay Topy a sum based on the precious metal recovered; and Topy would remit that sum to Gem, less Topy's commission. Under this arrangement, between February 2, 2021 and December 13, 2022, Gem sent Dowa ten shipments of laptop bases. The last two of these shipments give rise to this dispute.

Whereas for the first eight shipments "the results of the sampling of the laptop bases were relatively consistent with respect to the amount of gold (Au), e.g., between 94 and 110 Au[,]" for the last two shipments the assay results were a materially different "60 and 63 Au." Pet. ¶ 17. This difference was unexpected, because "Gem sent the same type of laptop bases for all ten shipments." *Id.* ¶ 17.

Dissatisfied with the results, Gem turned to Topy. After some communications with Gem, Topy contacted Dowa and "explained that Gem is not satisfied with the results and formally requested the detailed sampling procedures for the shipments." *Id.* ¶ 20. In response, Dowa sent some of the requested materials, but it "never provided the entire specific assay procedure for the Disputed Shipments, all the underlying calculations for the

_____

[3]The court recounts the background facts favorably to Gem as the nonmovant. "When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in the present case[] . . . the court must accept as true the nonmover's allegations and resolve all factual disputes in its favor." *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 625 (5th Cir. 1999).

Disputed Shipments, and all the underlying resulting figures for the Disputed Shipments." *Id.* ¶ 20 (bold font and underlining omitted).

Still dissatisfied, "Gem followed up and asked for additional information, including videos and signed confirmation for the person in charge of the shredding process, protocols of the sampling methods, and other verification methods to validate the material was fully shredded and samples properly taken." *Id.* ¶ 21. Dowa once again complied only partially with Gem's request, which led Gem to insist that Dowa "[s]ettle the first two loads as [the] same assay as [the] third load[, at] $2.95/lb," or Gem would "have to file legal process to request validation of Dowa's sampling and assaying process for [its] shipment." *Id.* ¶ 24.

Gem also turned to Topy for assistance. "Gem repeatedly asked Topy to pursue remedies against Dowa, including conducting an arbitration proceeding." *Id.* ¶ 26. Topy, however, "declined to conduct arbitration with Dowa despite Gem's repeated requests. Topy has consistently failed to pursue the interests of Gem by not pursuing Dowa to adequately substantiate its sampling and properly compensate Gem for the laptop bases." *Id.* ¶ 28. Instead, on or about March 14, 2024, Topy sent to Gem a payment of $82,905.20. "[T]he outstanding amount owed to Gem is still over $93,000." *Id.* ¶ 29.

Gem sued Topy Enterprises, Topy America, Dowa Eco-Systems, and Dowa International in county court. Gem's county-court petition asserts claims against all four defendants for fraudulent inducement, negligent misrepresentation, and breach of contract; against the Topy defendants for breach of fiduciary duty; and against the Dowa defendants for unjust enrichment, quantum meruit, and promissory estoppel. Defendants removed the

case to this court based on diversity of citizenship. Topy Enterprises, Topy America, and Dowa International now move, in pertinent part, to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. The court is deciding the motion on the briefs, without an evidentiary hearing or oral argument.[4]

II

A

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite. The court first decides whether the long-arm statute of the state in which it sits confers personal jurisdiction over the defendant. If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Topy Enterprises, Topy America, and Dowa International would be consistent with the Due Process Clause of the Fourteenth Amendment. *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

---

[4]Because the court is dismissing this action as to these defendants for lack of personal jurisdiction, it need not reach Gem's request for leave to perfect service on Topy Enterprises, or the contentions of Topy Enterprises, Topy America, and Dowa International that Gem has failed to state a claim on which relief can be granted. *See Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order entered granting its motion to dismiss.").

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

B

A defendant's contacts with the forum state may support either general or specific jurisdiction over the defendant. *See Mink*, 190 F.3d at 336. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation and internal quotation marks omitted). "The paradigm forums in which a corporate defendant is at home[] . . . are the corporation's place of incorporation and its principal place of business." *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 413 (2017) (citation and internal quotation marks omitted).

But the "exercise of general jurisdiction is not limited to these forums; in an exceptional case, a corporate defendant's operations in another forum may be so substantial

- 5 -

and of such a nature as to render the corporation at home in that State."  *Id.* (citation and internal quotation marks omitted).  An exemplary case is *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, (1952), in which "war had forced the defendant corporation's owner to temporarily relocate the enterprise from the Philippines to Ohio[,]" whereupon "Ohio became the center of the corporation's wartime activities."  *Id.* (citations and internal quotation marks omitted).

"By comparison, specific personal jurisdiction is narrower and attaches only when there is a sufficient connection between a defendant's forum-related contacts and a plaintiff's causes of action."  *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 372 (5th Cir. 2024).

> This circuit applies a three-step test for determining specific personal jurisdiction: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.  If a plaintiff establishes the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable.

*Id.* (citations and internal quotation marks omitted).

## C

"The district court usually resolves the jurisdictional issue without conducting a hearing."  *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993).  In addition to the complaint, "the district court may consider the contents of the record before the court at the

time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 344 (5th Cir. 2002) (citation and internal quotation marks omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted). "This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)), *aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion).

III

The court considers initially whether Gem has made a *prima facie* showing that the court has personal jurisdiction over Topy Enterprises.

A

The court first determines whether Gem has made a *prima facie* showing of general jurisdiction.

Topy Enterprises is a Japanese corporation headquartered in Japan. This is not "an exceptional case" in which Topy Enterprises' operations in Texas—activities relating to a

- 7 -

singular contract with a Texas company—are "so substantial and of such a nature as to render them at home in [the state of Texas]." *BNSF Ry.*, 581 U.S. at 413 (citation and internal quotation marks omitted); *see, e.g.*, *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 242-43 (5th Cir. 2022) (en banc) (citation and internal quotation marks omitted) (concluding that Japanese company's United States contacts, which were substantial "in absolute terms" and generated "about $1.47 billion in consolidated revenue each year[,]" were not "so substantial and of such a nature as to render the corporation at home in [the state of Texas]"); *compare Perkins*, 342 U.S. at 448 (holding that Ohio could exercise general jurisdiction over Philippine mining company that moved its operations to Ohio) *with Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984) (holding that Texas lacked general jurisdiction over Colombian corporation that sent CEO to Texas for contract-negotiation session; accepted checks drawn on Texas bank; purchased helicopters, equipment, and training services from Texas-based company; and sent personnel to Texas-based company's facilities in Texas for training). Accordingly, even if the court accepts as true Gem's vague and conclusory allegation that Topy Enterprises "does business . . . in Texas," Pet. ¶ 3, Topy Enterprises is "at home" in Japan, not Texas. *See BNSF Ry.*, 581 U.S. at 413; *see also, e.g.*, *Matthews v. United HealthCare Servs., Inc.*, 2020 WL 5411698, at *3 (N.D. Tex. Sept. 9, 2020) (Brown, J.) (concluding that plaintiff's "conclusory allegations that the [defendant] company is subject to general jurisdiction because it does business in Texas and has systematic and continuous contacts in the State" were insufficient); *Am. Bank, F.S.B. ex rel. Am. Premium Fin. v. Auto-Owners Mut. Fire & Cas. Ins. Co.*, 2010

WL 3784282, at *2 (N.D. Tex. Sept. 27, 2010) (McBryde, J.) (citation omitted) ("Plaintiff fails to allege any specific facts in its petition in support of its claim that this court can exercise personal jurisdiction over defendant. Rather, there are only conclusory allegations that defendant 'generally does business in Texas and is authorized to transact insurance business in the state of Texas.'").

B

The court considers next whether Gem has made a *prima facie* showing of specific jurisdiction.

1

First, Gem asserts that Topy Enterprises "meets the requirements of personal jurisdiction" because it "specifically contracted with a Texas company, Gem, to help broker and facilitate the sale of goods to a foreign company[,]" "repeatedly contacted Gem via phone calls and emails to Texas[,] "entered into a contract in Texas," and "made payments to the Texas company." P. Resp. (ECF No. 25) at 6.

"The Supreme Court has long held that an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts in the other party's home forum." *Shambaugh & Son*, 91 F.4th at 372-73 (alteration in original) (citation, emphasis, and internal quotation marks omitted). "[W]hen specific personal jurisdiction is grounded on contractual relations, lower courts must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine 'whether the defendant purposefully established

- 9 -

minimum contacts within the forum.'" *Id.* at 373 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)).

Topy Enterprises' contract-related contacts with Texas are too attenuated to support specific jurisdiction.  Gem alleges that Topy Enterprises entered into a contract with a Texas company, sent electronic communications to Texas, and sent payments to Texas.  These contacts are insufficient to support specific jurisdiction over Topy Enterprises in Texas.  *See, e.g.*, *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004) (collecting cases in which the Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant").  Gem has therefore failed to make a *prima facie* showing of general jurisdiction.

2

Second, Gem contends that, because Topy Enterprises "committed alleged torts in Texas[,]" it "meets the requirements of personal jurisdiction in this Court."  P. Resp. (ECF No. 25) at 6.  Gem posits that "this circuit has long held that when a defendant directs purposeful, tortious activity towards a particular forum, they should anticipate being haled into court in that forum."  *Id.* at 5 (citations omitted).  In particular, Gem relies on the claim that Topy Enterprises fraudulently induced Gem to enter into a contract with it.

- 10 -

> [T]he minimum-contacts test for personal jurisdiction in [tort] differs from that in contract. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." "The proper focus of the minimum contacts inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation."

*Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 490 (5th Cir. 2018) (footnote, citations, and internal quotation marks omitted) (first quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014); then quoting *id.* at 291). "A single act by a defendant can be enough to establish personal jurisdiction if that act gives rise to the claim asserted." *FCA Invs. Co. v. Baycorp Holdings, Ltd.*, 2002 WL 31049442, at *2 (5th Cir. Aug. 29, 2002) (unpublished opinion). "In cases alleging the intentional tort of fraud, the defendant's participation in a single telephone call is enough to establish personal jurisdiction if the content of the call gave rise to the fraud claim." *Id.*

Even so, Gem's allegations are insufficient to make a *prima facie* showing that Topy Enterprises had sufficient tort-related contacts with Texas to support specific jurisdiction. Gem alleges that Topy Enterprises made fraudulent misrepresentations to induce Gem, a Texas company, to enter into a contract with it. But Gem alleges no facts that connect Topy Enterprises' alleged tortious acts to Texas beyond their being directed at a Texas resident. Gem does not allege, for example, that the fraudulent misrepresentations were sent to, or received, in Texas. That Gem's "[petition] alleges an intentional tort is not enough." *Evans v. Sweetser*, 1997 WL 120001, at *1 (5th Cir. Mar. 14, 1997) (per curiam) (unpublished opinion). Nor is it enough that Gem alleges that Topy Enterprises directed its alleged

- 11 -

intentional tort at Gem.  "[O]ur 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden*, 571 U.S. at 285; *see also McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009) (citation, alteration, and internal quotation marks omitted) ("As we have held foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum.").  Gem "cannot be the only link between [Topy Enterprises] and [the state of Texas]." *Walden*, 571 U.S. at 285.

Because Gem has failed to make allegations that connect Topy Enterprises' alleged tortious acts to Texas, these alleged acts are insufficient to make a *prima facie* showing that Topy Enterprises purposefully availed itself of the privileges of conducting activities in Texas.  *See, e.g.*, *Walden*, 571 U.S. at 289 (concluding that Nevada lacked specific jurisdiction over Georgia defendant based on alleged tort against Nevada plaintiff where defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada"); *Calder v. Jones*, 465 U.S. 783, 788-89 (1984) (concluding that California had specific jurisdiction over Florida defendants based on alleged libel against California plaintiff where defendants relied on phone calls to "California sources" for information in their article, wrote the story about plaintiff's activities in California, caused reputational injury in California by writing allegedly libelous article that was widely circulated in the State, and "brunt" of injury suffered by plaintiff in that State); *Trois*, 882 F.3d at 491 (holding that Texas had specific jurisdiction over Ohio defendant based on alleged fraud against Texas plaintiff where defendant "reach[ed] out to Texas via phone in

order to garner business and make specific representations"); *FCA Invs.*, 2002 WL 31039442, at *2-3 (concluding that Texas had specific jurisdiction over New Zealand company based on its fraudulent misrepresentations to Texas company where "uncontested facts show[ed] that [the New Zealand company] contacted [the Texas company] in Houston via telephone and telefax[,]" "sent [the Texas company] a lengthy information memorandum outlining the proposed . . . venture[,]" and "met with [the Texas company] in Houston to discuss the project"); *Evans*, 1997 WL 120001, at *1 (concluding that Texas lacked specific jurisdiction over New Mexico defendants based on alleged torts against Texas plaintiff where defendants sent letters to plaintiff in Texas  regarding New Mexico property, and "[u]nlike *Calder*, where over half a million copies of the allegedly libelous article were sent to California for the express purpose of distributing the article to the magazine's largest state market, that the [plaintiff's] address was in Texas was a 'mere fortuity'").  Gem has therefore failed to make a *prima facie* showing of specific jurisdiction over Topy Enterprises.

IV

Next, the court considers whether Gem has made a *prima facie* showing that the court has personal jurisdiction over Topy America.

A

The court first determines whether Gem has made a *prima facie* showing of general jurisdiction.

Topy America is a Kentucky corporation whose principal place of business is located in Kentucky.  This is not "an exceptional case" in which Topy America's operations in

Texas—sharing a parent company with Topy Enterprises—are "so substantial and of such a nature as to render them at home in [the state of Texas]." *BNSF Ry.*, 581 U.S. at 413; *see, e.g.*, *Douglass*, 46 F.4th at 242-43; *compare Perkins*, 342 U.S. at 448 *with Helicopteros Nacionales*, 466 U.S. at 416. Accordingly, even if the court accepts as true Gem's vague and conclusory allegation that Topy America "does business . . . in Texas," Pet. ¶ 4, Topy America is "at home" in Kentucky, not Texas. *See BNSF Ry.*, 581 U.S. at 413; *see also, e.g.*, *Matthews*, 2020 WL 5411698, at *3; *Auto-Owners Mut. Fire & Cas.*, 2010 WL 3784282, at *2. Gem has therefore failed to make a *prima facie* showing of general jurisdiction over Topy America.

B

The court considers next whether Gem has made a *prima facie* showing of specific jurisdiction.

Except for Gem's vague and conclusory allegation that Topy America "does business . . . in Texas," Pet. ¶ 4, Gem makes allegations against Topy America only to the extent that its petition includes collective references to "Topy" that include Topy America. Yet Topy America is an indirect affiliate of Topy Enterprises with unrelated operations; none of its operations is based in Texas; although it has "sold parts to buyers in Texas sporadically, it does not make a concerted effort to target the Texas market over any other markets in the United States," D. App. (ECF No. 18-1) at 2, ¶ 9; it has never done business or otherwise communicated with Gem or Dowa; it is not a party to any of Gem's contracts; and it is not alleged to have any involvement whatsoever in the relevant transactions. This absence of

- 14 -

contacts with Texas is plainly insufficient to support specific jurisdiction over Topy America. *See Shambaugh & Son*, 91 F.4th at 372 (explaining that first step in specific jurisdiction analysis is determining "whether the defendant has minimum contacts with the forum state").[5] Gem has therefore failed to make a *prima facie* showing of specific jurisdiction over Topy America.

V

Finally, the court considers whether Gem has made a *prima facie* showing that the court has personal jurisdiction over Dowa International.

A

The court first determines whether Gem has made a *prima facie* showing of general jurisdiction.

Dowa International is a New York corporation whose principal place of business is located in New York.  This is not "an exceptional case" in which Dowa International's operations in Texas—a dozen previous business visits with no relation to Gem and a possible meeting with a Gem representative without any connection to the present dispute—are "so substantial and of such a nature as to render them at home in [the state of Texas]."  *BNSF Ry.*, 581 U.S. at 413; *see, e.g.*, *Douglass*, 46 F.4th at 242-43; *compare Perkins*, 342 U.S. at 448 *with Helicopteros Nacionales*, 466 U.S. at 416.  Accordingly, even if the court accepts

---

[5]Even if the court were to construe Gem's petition's use of the collective term "Topy" to make allegations against Topy America, and ignore Topy America's affidavit, the court would still lack specific jurisdiction over Topy America for the same reasons that it lacks specific jurisdiction over Topy Enterprises.

as true Gem's vague and conclusory allegation that Dowa International "does business . . . in Texas," Pet. ¶ 6, Dowa International is "at home" in New York, not Texas. *See BNSF Ry.*, 581 U.S. at 413; *see also, e.g.*, *Matthews*, 2020 WL 5411698, at *3; *Auto-Owners Mut. Fire & Cas.*, 2010 WL 3784282, at *2. Gem has therefore failed to make a *prima facie* showing of general jurisdiction over Dowa International.

B

The court considers next whether Gem has made a *prima facie* showing of specific jurisdiction over Dowa International.

Except for Gem's vague and conclusory allegation that Dowa International "does business . . . in Texas," Pet. ¶ 6, Gem makes allegations against Dowa International only to the extent that its petition includes collective references to "Dowa" that include Dowa International. Yet Dowa International is "incorporated in New York with its principal place of business in New York," D. App. (ECF No. 27-1) at 1, ¶ 4; "maintains offices only in New York and California, with no physical presence, employees, or operations in Texas," *id.* at 1, ¶ 5; conducts no business in Dallas County or anywhere else in Texas, has no bank accounts or property in the state, and derives no revenue from Texas; and "has never advertised or marketed its services specifically to Texas customers," *id.* at 1-2 ¶ 9. And Dowa International's few contacts with Texas—previously visiting two unrelated suppliers with which it no longer does business approximately a dozen times, and possibly visiting a Gem employee regarding an unrelated matter—are wholly unrelated to Gem's claims. Accordingly, Dowa International's contacts with Texas are plainly insufficient to support

- 16 -

specific jurisdiction. *See Shambaugh & Son*, 91 F.4th at 372 (explaining first step in specific jurisdiction analysis is determining "whether the defendant has minimum contacts with the forum state" and second step is determining "whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts"). Gem has therefore failed to make a *prima facie* showing of specific jurisdiction over Dowa International.

*   *   *

For the reasons explained, the court grants the Rule 12(b)(2) motions of Topy Enterprises, Topy America, and Dowa International and dismisses Gem's actions against them without prejudice by Rule 54(b) final judgment filed today.

**SO ORDERED**.

October 8, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

- 17 -